UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| John J. Fitzgerald, III<br>13044 Gordon Circle<br>Hagerstown, Maryland 21742<br><br>        Plaintiff,<br><br>v.<br><br>J.J.F. Management Services, Inc.<br>11411 Rockville Pike<br>Rockville, Maryland 20852<br><br>    SERVE ON:<br>    CSC-LAWYERS INCORPORATING<br>    SERVICE COMPANY,<br>    RESIDENT AGENT<br>    7 St. Paul Street, Suite 820<br>    Baltimore, Maryland 21202<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. |

## **COMPLAINT**

Plaintiff John J. Fitzgerald, III, brings this action against J.J.F. Management Services, Inc., and in support thereof states as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff John J. Fitzgerald, III ("John") is a resident of Washington County, Maryland.

2.      Defendant J.J.F. Management Services, Inc. ("J.J.F.") is a Maryland corporation with its principal place of business located at 11411 Rockville Pike, Rockville, Maryland 20852.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

1

4.      On September 18, 2024, Plaintiff timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant J.J.F. for discrimination in employment.  On October 1, 2024, the EEOC issued Plaintiff a Notice of Right to Sue J.J.F. for violation of the Americans with Disabilities Act.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because all parties are residents of this District and a substantial part of the events giving rise to this claim occurred within this District.

## FACTS

6.      On March 1, 1970, at the age of eleven, John began working for his father, John "Jack" Fitzgerald Jr.'s car dealership in Bethesda, Maryland.

7.      Over the next decade, John worked for multiple car dealerships, including his father's, rising from a service attendant to general sales manager at the age of twenty-two.

8.      In 1984, John was appointed general manager of Jack's Dodge dealership in Wheaton, Maryland.

9.      In 1985, John was tasked with opening a Dodge dealership for Jack in Frederick, Maryland.  John served as general manager and president of the Frederick dealership, which became one of the most successful Dodge dealerships in the country.

10.     Over the next five years, John successfully opened and operated additional dealerships for his father in western Maryland and Pennyslvania.

11.     In 1990, as a result of his hard work and success, John was employed as a vice president of J.J.F., a management company that owned all of Jack's car dealerships.

12.     John served as vice president of J.J.F for the next thirty-three years.

2

13.     John's role as vice president involved him continuing to open and operate car dealerships for J.J.F.

14.     John's compensation as a vice president for J.J.F. was structured as a base salary with a discretionary bonus.

15.     By July of 2023, John's base salary was $300,000.00 with the bonus determined by a preset formula based on J.J.F. annual performance data.

16.     For example, John's total compensation from J.J.F. in 2022 was $895,000.

17.     In July of 2023, John suffered a stroke and was in the hospital for four days.

18.     Upon being discharged from the hospital, Jack called John and demanded that John provide access to his medical records, threatening John that if he refused "he would never see the inside of a car dealership again."

19.     John was placed on short term disability while he recovered, but his overall prognosis was positive.

20.     By November of 2023, John's recovery had progressed to the point that he began to inquire about a return-to-work date.

21.     Initially, J.J.F. through its president Robert Smith and executive chairman Jack, told John to continue to work on his health.

22.     Unbeknownst to John, J.J.F. prepared and delivered a long-term disability application to J.J.F.'s insurance carrier, Lincoln Financial.

23.     In January of 2024, J.J.F. sent John paperwork from Lincoln Financial regarding placing him on long-term disability benefits.

24.     The paperwork inaccurately indicated the John's purported disability was multiple sclerosis.

25.     John did not believe that he qualified for long-term disability given that he has never been diagnosed with multiple sclerosis and was otherwise disqualified from such benefits based on the improvements in his condition.

26.     Mr. Fitzgerald further consulted with his attending physician, neurologist, and cardiologist in connection with the long-term disability application.

27.     All three of Mr. Fitzgerald's care providers confirmed that John was able to perform his job duties with the only physical limitation being some impairment of vision in his right eye.

28.     John submitted this information to Lincoln Financial, expecting that the application would be declined.

29.     However, to his surprise, Lincoln Financial approved his transfer to long-term disability.

30.     Representatives from Lincoln Financial informed John that this new action was taken at the Company's request on the basis of his vision impairment.

31.     On March 27, 2024, John received a letter from J.J.F. president Robert Smith which refereed to his "separation from employment."

32.     Then in April of 2024, J.J.F. apparently changed course when Jack indicated John could return to work in the position of "General Sales Manager".

33.     The General Sales Manager position is a substantial demotion from Mr. Fitzgerald's pervious role of vice president and includes a 75% reduction in salary.

34.     Jack acknowledged the reduction in salary, representing that John's previous salary structure was "no longer available to him" without providing an explanation.

4

35.    Further, J.J.F.'s offer for John's return to work was conditioned on John being able to drive himself.

36.    The ability to drive is not a necessary requirement to perform the duties of John's previous positions with J.J.F., nor has it been part of the job description for the General Sales Manager position.

## COUNT ONE
## AMERICANS WITH DISABILITIES ACT

37.    Plaintiff incorporates paragraphs 1 through 36 as though fully restated herein.

38.    Title I of the Americans with Disability Act, 42 U.S.C. § 12111, et seq., prohibits employers from discriminating against a qualified individual on the basis of disability in regard to the terms, conditions, or privileges of employment.

39.    The term "disability" for purposes of the ADA includes a physical or mental impairment that substantially limits one or more major life activities of such individual or being regard as having such an impairment.

40.    Defendant J.J.F. has demoted and/or terminated John because they perceive he has a disability following his stroke.

41.    Defendant J.J.F.'s conduct constitutes discrimination on the basis of disability in violation of Title I of the Americans with Disability Act, 42 U.S.C. § 12111, et seq.

42.    As a result of Defendant's discriminatory conduct, Mr. Fitzgerald suffered and continues to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Fitzgerald, III prays for this Court to enter judgment against Defendant J.J.F. Management Services, Inc. as follows:

A.      Grant judgment in favor of John Fitzgerald and declare that Defendant has violated Title I of the Americans with Disability Act, 42 U.S.C. § 12111, et seq.

B.      Award Mr. Fitzgerald back pay, with interest.

C.      Award Mr. Fitzgerald front pay.

D.       Award Mr. Fitzgerald compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's failure to comply with the requirements of Title I of the Americans with Disability Act, 42 U.S.C. § 12111, et seq.

E.      Award Mr. Fitzgerald punitive damages.

F.      Award Mr. Fitzgerald the reasonable attorney's fees and costs incurred in prosecuting this action.

G.      Grant Mr. Fitzgerald such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

                                POWELL, LLC


                                _____/s/ Clark S. Adams_____
                                Clark S. Adams, MD Fed. Bar No. 21195
                                19 North Court Street
                                Suite 201
                                Frederick, Maryland 21701
                                Telephone: (301) 668-7575
                                Facsimile: (301) 668-7755
                                cadams@powell-llc.com
Dated:  December 16, 2024       Counsel for Plaintiff

6