**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **JOHN J. FITZGERALD, III**, | * | |
| Plaintiff, | * | |
| | * | Case No. 8:24-cv-03634-TDC |
| v. | * | |
| | * | |
| **J.J.F. MANAGEMENT SERVICES, INC.**, | * | |
| Defendant. | * | |

******

**MEMORANDUM OPINION AND ORDER**

This is a case about a car salesman, Plaintiff John J. Fitzgerald, III, who spent his life working for his father's company, Defendant J.J.F. Management Services, until the company allegedly fired or demoted Plaintiff after he suffered a stroke. Pending before the Court is Defendant's Notice of Intent to File a Motion to Compel Production of Documents, ECF No. 39, which the Court will construe as an expedited motion to compel. At issue is whether Plaintiff, who claims he has never used a computer and does not know how to use one, waived attorney-client privilege over certain communications by instructing his personal assistant, Tiffany Gentry, to manage his email inbox. Because Ms. Gentry's services are reasonably necessary to facilitate communication between Plaintiff and his counsel, attorney-client privilege protects the emails at issue from disclosure. The Court therefore denies Defendant's motion.

## BACKGROUND

Plaintiff alleges that he began working for his father's car dealership in 1970, at age eleven, and continued working for his father's company (Defendant) until around the time Plaintiff suffered a stroke in 2023. ECF No. 1 ¶¶ 6, 17, 20–21, 31–36. Plaintiff asserts that, after the stroke, Defendant demoted and/or terminated Plaintiff because Defendant perceived Plaintiff to have a disability. *Id.* ¶ 40. Plaintiff filed this lawsuit on December 16, 2024, alleging a violation of the Americans with Disabilities Act. *Id.* ¶¶ 37–42. Defendant filed its Answer on January 28, 2025. ECF No. 5. The parties are now conducting discovery, during which Defendant's counsel deposed Plaintiff and Ms. Gentry. ECF No. 47-1; ECF No. 49.

Plaintiff and Ms. Gentry testified to the following facts. In or around January 2024, Ms. Gentry began working as Plaintiff's personal assistant, having previously worked for Defendant in a similar capacity. ECF No. 47-1, at 26–27; ECF No. 49, at 108–109. Plaintiff pays Ms. Gentry a salary through a business account to help him with various tasks, including financial management, home maintenance, personal care, scheduling, and "facilitat[ing] emails." ECF No. 47-1, at 14, 27–28, 30–32; ECF No. 49, at 189–190. Plaintiff testified that he has "never used a computer," "do[es] not know how to use a computer," and does not "use e-mail." ECF No. 49, at 109, 140–141. Ms. Gentry monitors Plaintiff's email account, prints emails and passes them along to Plaintiff, types Plaintiff's responses, and sometimes reads emails to Plaintiff if he is not present with her. ECF No. 47-1, at 14–15, 68. She testified that she doesn't "feel comfortable" reading emails relating to this case and does not do so "unless [Plaintiff] asks [her] to read them if he can't at that moment." *Id.* at 15. At Plaintiff's request, Ms. Gentry has read to him an unspecified number of emails from his attorney regarding this case. *Id.*

On August 12, 2026, Defendant filed the pending Notice of Intent to File a Motion to Compel Production of Documents, seeking to compel "production of responsive communications as to which attorney-client privilege has been waived through disclosure to Ms. Gentry and/or which are not protected work product." ECF No. 39, at 2. On August 18, 2026, the case was referred to the undersigned for discovery and related scheduling. ECF No. 40. On August 26, 2026, upon the Court's request, the parties filed letter briefs stating their positions. ECF No. 43; ECF No. 44. The Court held a discovery conference on September 24, 2026. ECF No. 46. The Court requested transcripts of Plaintiff's and Ms. Gentry's depositions, which the parties subsequently filed. ECF No. 47-1; ECF No. 49.

**STANDARD OF REVIEW**

District courts enjoy "substantial discretion in managing discovery," including granting or denying motions to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). Generally, "[t]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Fine v. Bowl Am., Inc.*, No. 21-cv-1967, 2023 WL 8479250, at *2 (D. Md. Dec. 7, 2023); *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005).

**DISCUSSION**

The central, threshold question in this dispute is whether emails that would otherwise fall within the attorney-client privilege are nonetheless discoverable because Ms. Gentry read them or had access to them. Because the Court holds that the emails at issue are privileged, the Court need not address the parties' remaining arguments relating to the work-product doctrine and the burden and proportionality of Defendant's request.

The attorney-client privilege "has a venerable pedigree." *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984). It "is the oldest[1] of the privileges for confidential communications known to the common law," and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing 8 Wigmore, Evidence § 2290 (McNaughton rev. 1961)). Despite its important purpose, the privilege is "inconsistent with the general duty to disclose and impedes the investigation of the truth," so it "must be strictly construed." *(Under Seal)*, 748 F.2d at 875. In federal-question cases like this one, federal common law applies. Fed. R. Evid. 501.

The attorney-client privilege generally applies to "confidential communications" between attorney and client "made for the purpose of facilitating the rendition of professional legal services to the client." *(Under Seal)*, 748 F.2d at 874 n.5 (quoting Sup. Ct. Standard 503(b), 56 F.R.D. 183, 236 (1972)).[2] It "protect[s] not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. Because "the privilege protects only confidential client communications," it typically does not cover communications "disclosed to third persons." *(Under Seal)*, 748 F.2d at 874.

---

[1] The privilege "finds its roots in Roman law," *(Under Seal)*, 748 F.2d at 873, and was "unquestioned" by the time of Elizabeth I's reign, 8 Wigmore, Evidence § 2290, at 542 (McNaughton rev. 1961).

[2] Though Supreme Court Standard 503 "was not adopted by Congress to be part of the Federal Rules of Evidence, it was promulgated by the Supreme Court" in 1972 "and for the most part restated the common law as it then applied in the federal courts. It therefore provides a comprehensive guide to the federal common law of attorney-client privilege." *(Under Seal)*, 748 F.2d at 874 n.5; Sup. Ct. Standard 503(b), 56 F.R.D. at 184, 235.

Despite the general rule on third-party disclosures, the privilege survives disclosures made "in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means," as long as the client maintains a subjective "intent to maintain confidentiality," which is "inferable from the circumstances." *Id.* at 874–75 (citation modified); *see also* Restatement (Third) of the Law Governing Lawyers § 70 cmt. f (A.L.I. 2000) ("A person is a confidential agent for communication if the person's participation is reasonably necessary to facilitate the client's communication with a lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence."). This exception is sometimes called the "intermediary doctrine." *In re Lindsey*, 158 F.3d 1263, 1279–80 (D.C. Cir. 1998). The parties primarily dispute whether Ms. Gentry's services were "reasonably necessary" to facilitate communication between Plaintiff and counsel.

Courts have long wrestled with what constitutes reasonable necessity in this context. As one court lamented in 1849, "it is impossible to say what is necessity." *Reid v. Langlois* (1849) 41 Eng. Rep. 1408, 1412 (UK). The court in *Reid* posed this hypothetical: Consider "a man living at Calcutta, and wishing to advise with counsel in London." *Id.* Must the man "come to London, or write directly to a solicitor," or may he "authorise his agent in England to communicate with a solicitor" instead? *Id.* The court held that "[t]here is no good reason, and I believe no authority, for a rule" that prevents communication through an agent in such a scenario. *Id.*; *see also Walker v. Wildman* (1821), 56 Eng. Rep. 1007, 1008 (UK) (holding that "the protection was the same whether the client communicated directly with his professional adviser, or through the intervention of a third person"). Other courts and commentators have shared the basic instinct that "[t]he client's freedom of communication requires a liberty of employing other means than his own

personal action." 8 Wigmore, *supra*, § 2317, at 618; *Thompson v. Buhrs Ams., Inc.*, No. 07-cv-2746, 2009 WL 10711525, at *3 (D. Minn. June 23, 2009) (quoting 8 Wigmore, *supra*, § 2317) (same); *Abbott Lab'ys v. Airco, Inc.*, No. 82 C 3292, 1985 WL 3596, at *4 (N.D. Ill. Nov. 4, 1985) (quoting 8 Wigmore, *supra*, § 2317) (same); *Danisch v. Guardian Life Ins. Co. of Am.*, 18 F.R.D. 77, 79 (S.D.N.Y. 1955) (same).

Courts have thus recognized that the intermediary doctrine is not so exacting as to require the client's "fundamental inability to communicate with his attorney without an intermediary." *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 438 (D. Md. 2005). Rather, the federal common law recognizes that some "closely related" third parties may be "appropriate, even if not vital," for attorney-client communication, and disclosure to such third parties does not destroy the privilege. *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997); *United States v. Koerber*, No. 09-cr-302, 2011 WL 2174355, at *9 (D. Utah June 2, 2011) (quoting *Mass. Inst. of Tech.*, 129 F.3d at 684). Among this "small circle of 'others' with whom information may be shared without loss of the privilege" are "secretaries, interpreters, counsel for a cooperating co-defendant, [and] a parent present when a child consults a lawyer." *Mass. Inst. of Tech.*, 129 F.3d at 684; *see also* Restatement (Third) of the Law Governing Lawyers § 70 cmt. f, illus. 3 ("Client regularly employs Secretary to record and transcribe Client's important business letters, including confidential correspondence. Client uses the services of Secretary to prepare a letter to Lawyer. Secretary is an agent for communication."); Sup. Ct. Standard 503(a)(4) advisory committee's note, 56 F.R.D. at 238 ("Practicality requires that some disclosure be allowed beyond the immediate circle of lawyer-client and their representatives without impairing confidentiality."); 3 Weinstein's Federal Evidence § 503.15 (2026) ("Disclosure to persons employed by the attorney

or the client who are reasonably necessary to facilitate the communication does not remove the element of confidentiality or destroy the privilege. Secretaries, clerks, and interpreters clearly fall within this category.").

Ms. Gentry falls within the "small circle of 'others' with whom" Plaintiff may share attorney-client communications "without loss of the privilege." *Mass. Inst. of Tech.*, 129 F.3d at 684. Courts and commentators have generally treated "[s]ecretaries" as "clearly" "reasonably necessary to facilitate" attorney-client communications. 3 Weinstein, *supra*, § 503.15; *see also Mass. Inst. of Tech.*, 129 F.3d at 684; *Koerber*, 2011 WL 2174355, at *9. Thus, even if Plaintiff *could* use a computer, his use of Ms. Gentry's services would still be "reasonably necessary" under the federal common law. Moreover, the circumstances indicate that Plaintiff believed Ms. Gentry would hold the communications in confidence. Managing Plaintiff's inbox is part of Ms. Gentry's ordinary job duties, and she treats emails as private, only reading them when her responsibilities require her to do so. ECF No. 47-1, at 14–15. The "customary relationship between" Plaintiff and Ms. Gentry therefore indicates that Plaintiff "reasonably believes that [Ms. Gentry] will hold the communication[s] in confidence." Restatement (Third) of the Law Governing Lawyers § 70 cmt. f; *see also Fine*, 2023 WL 8479250, at *4 (holding that attorney-client emails sent to client's wife, who provided "technical support" for client, were sent in confidence and privileged).

Defendant incorrectly asserts that Plaintiff should have taken additional steps to limit Ms. Gentry's access to his emails. Defendant argues that Plaintiff should not have allowed Ms. Gentry to *read* the emails, even if he needed her to pass them along. ECF No. 43, at 2. Defendant further contends that Plaintiff could have used alternative means of communication, *id.*, or that he is in fact more proficient with computers than he now claims to be, ECF No. 50. These arguments fail.

As discussed above, personal assistants presumptively fall within the circle of privilege, regardless of whether their services are strictly "vital." *Mass. Inst. of Tech.*, 129 F.3d at 684.

Even without applying this presumption, Plaintiff's particular circumstances more than satisfy the reasonable-necessity requirement. At the very least, Plaintiff is not comfortable using computers on his own, including for email. ECF No. 49, at 109, 140–141; ECF No. 50, at 2. Moreover, Ms. Gentry only reads attorney-client emails when Plaintiff "can't" do so himself. ECF No. 47-1, at 15. Ms. Gentry's services thus "materially facilitate[] and improve[] the attorney-client communication process," *Flo Pac, LLC v. NuTech, LLC*, No. 09-cv-510, 2010 WL 5125447, at *8 (D. Md. Dec. 9, 2010) (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 264 (5th ed. 2007)), by allowing counsel to communicate with Plaintiff via email—counsel's standard communication method, ECF No. 44, at 2. Plaintiff need not scrupulously tailor his use of Ms. Gentry's services to only the truly indispensable. Such a requirement would be nigh-impossible to administer and would unduly burden Plaintiff's "freedom of communication." 8 Wigmore, *supra*, § 2317, at 618.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Compel, ECF No. 39, is denied.

Date: October 23, 2026

/s/
Ajmel A. Quereshi
United States Magistrate Judge